First case for argument is United States v. Paniagua-Garcia. Mr. Ansell. Good morning, Your Honors. Harold Samuel Ansell on behalf of the appellant. May it please the Court. The issue, I think, before the Court is whether the objective facts observed by the stopping officer gave that officer a particularized basis to reasonably suspect that an infraction had occurred. In this instance, he reached the subjective conclusion that the driver was texting while driving. However, that conclusion happened to be incorrect. I don't think it matters whether it was incorrect or not. So your argument is the same, even if he had been correct, right? Even if he had been correct. It's still not adequate objective information from which a reasonable officer could find that could believe that he was texting while driving. Therefore, the stop was illegal. With respect to the government's argument that a mistake of fact is the issue, I would remind the Court of United States v. Garcia-Garcia, which states that the officer's subjective beliefs are largely irrelevant to the inquiry of probable cause or reasonable suspicion. And I think that a mistake of fact is more appropriate when we're talking about a predicate fact that gives rise to a reasonable inference that an infraction or a crime has occurred. But in this case, the officer's mistake was his legal conclusion that there was reasonable suspicion. And because a cell phone can be used for so many things besides the specific... What exactly did the police officer see that made him think your client was texting rather than doing something else? He saw him holding the phone with his right hand, tilting his head down towards the phone, and the officer said that he appeared to be texting on the keypad, which I think... Was he using his fingers? Was he typing on it with his fingers? It's not clear. He was holding it with his right hand, so presumably he's holding the steering wheel with the other hand. If he wasn't holding the steering wheel, I think that would have been noted. Or his knee. Perhaps his knee, but I think the officer still would have noted that if he's able to observe the cell phone. It's not being held up because the officer said he had his head tilted down. So we know the cell phone is held down where one might typically hold a cell phone, and that he appeared to be texting, which I think is a subjective belief, but it gives rise to... Can you hold the cell phone and be texting with that hand? I think it's difficult to text with one hand, but I think it can be done. I'll take judicial notice. It's possible. But I don't know how you tell whether somebody's... How he could tell whether he was texting or whether he was typing in a phone number, which is legal under the Indiana law, correct? Exactly. Or a text message that I'll be home soon, right? Correct. Did the police officer think that he was seeing the guy with his fingers on the keyboard? All he said is that he appeared to be texting on the keypad. There's no indication that he could actually see the phone itself. It was down... It's not clear. If his head is tilted down and the officer is in a standard patrol car and this guy is in a regular sedan, I think it would be difficult to see over the door down into the driver's compartment. So it's not clear whether he could actually see the phone or the top of the phone or he could just tell that he was manipulating what appeared to be a phone. But I think that the... It's worth noting that the Indiana legislature recently outlawed all phone use for teenagers. So I think that creates a situation where there could be a mistake of a predicate fact, which were a mistake of fact would be the appropriate analysis. It makes it easier, that's for sure. Sure, sure. So if an officer sees someone who looks like he's a teenager but he's 23 years old and he's using the phone to call someone or use GPS or listen to music or whatever, that may be a reasonable mistake of fact to believe that a teenager is operating a phone in what is now a hands-free state for teenagers. Was that in the last legislative session? Yes, it just went into effect in July, I believe. Okay, thanks. Can I ask you briefly, Mr. Ansell? The district judge mentioned a Pew survey that you had put into the record, I gather, about the different ways that cell phones are used. Yeah, it was just a survey showing that... Yeah, I have to say I thought her observation that it really wasn't terribly helpful because it doesn't have to do with uses while driving, let alone uses while driving where some uses are illegal was correct. I don't think it really informs the court what someone would be, or informs the officer what someone would be likely or unlikely to be doing while they're driving with a phone. Could you address specifically, the government has made the point that if the officer's observations here are not sufficient to initiate a stop, that the law will in essence be a dead letter in Indiana. I wonder if you could address that. Well, I don't think applying Fourth Amendment analysis to this... The law is what it is. It's widely known that it's unenforceable. There have been at least two news articles with high-level state police and police chiefs saying that, look, we have no idea whether someone's texting or emailing or listening to music or making a phone call, and that's why in Indiana so few tickets have been written. So I think that... I'm sorry, I lost my train of thought. Well, I guess part of this just goes back to the notion, and I'll be curious to hear the government's thoughts on this as well, that this legislation was pretty high profile in Indiana when it was enacted, and there was a lot of... I mean, it affects millions of Hoosier drivers, and there was a lot of concern about just how broad the prohibitions would be, and I guess to borrow language from another arena, these problems aren't bugs but features of the law. That is, the legislature chose quite specifically to make it limited in its effect and its enforceability because that's what their constituents wanted. Correct. So I think that to apply proper Fourth Amendment analysis to a traffic stop based on this statute, it's not this court's responsibility to protect a statute that's poorly written. If it's unenforceable, it's unenforceable, but it ought not be a pretext to be able to pull over anyone who happens to be operating a phone while they're driving in Indiana when that's simply not against the law. Isn't there an offense, or at least it strikes me, that's distracted driving? Right, it's a distracted driving... It doesn't have to be a phone, but it doesn't have to be a phone. Well, this particular statute, it doesn't... Well, I understand, but isn't there a general ability for police to make a stop for a distracted driver? Correct, and I think in this instance it would have been... The stop may have been reasonable if the officer observed some other indicator that this driver was distracted. Well, if you have your eyes off the road looking down at a phone... Sure, but you can have your eyes off the road to look at the radio, you can have your eyes off the road to look at the speedometer. That's true, but that's also distracted driving. Correct, but I don't think it rises to the level of making this a reasonable stop. If he had lost control for a second and swerved within his lane or something like that had happened, then the stop would seem more reasonable. But just seeing someone holding a phone... What if it had been a female putting on makeup? Well, I... Or a male putting on makeup, for that matter. Right, or maybe someone just putting on some chapstick because their lips are dry. I mean, there's things that... We let people do what they have to do up to a certain point and be responsible for their actions for driving safely. But doesn't that end up counting as distracted driving, even though specifically it doesn't prohibit putting on makeup, the statute? It could, I suppose, yeah. But I don't think that that is dispositive to this issue. I think in this instance, you have a situation where the conduct that was observed by the officer was indistinguishable from legal conduct. And just like in the case of Flores, where the license plate may have covered some information that needs to be observable, to enforce this stop as valid would basically mean that anyone who happens to be looking at their phone for a moment while they're driving... Well, pursuing what Judge Kaney was asking you, did the officer say that there was anything wrong or any problem with his driving? No. Just... There wasn't any weaving before? No. Okay, well, thank you very much, Mr. Hansel. Thank you. Mr. McCoskey? May it please the Court, the germane question before this Court is not whether or not Indiana exercised wisdom in crafting the most perfect statute regarding prohibition of texting while driving. Look, it's beyond stupid. No, they didn't. But it's ridiculous, right? Your Honor, well, certainly, if those articles... Why are they singled out texting? From all the ways in which you endanger yourself and everybody else by fiddling with your cell phone, texting is just another way of, you know, becoming distracted from driving. That's certainly true, Your Honor. What if you're dialing a telephone number? That certainly might lead to distracted driving as well, Your Honor. And I think that the articles... I think, in fact, the appellant makes... Maybe he's making a great point for Indiana to enlarge the categories of prohibited behavior while you're driving. But the point is, Your Honor, and the only question really that this Court should consider is whether or not the actions of Deputy Simmons were reasonable, and they were. Well, how did he know that this... How did he know that Pontiaga was texting rather than making a phone call or doing the other permitted things that you can do with your cell phone? Well, in fact, after the fact, it became clear to the officer, and we concede, that he was not texting. But what it appeared, and this is... And by the way, the question came up earlier. The Court asked whether or not the phone was visible in the hand of the appellant. And according... This is in Appendix, page 15. This is a probable cause affidavit for the criminal complaint. Now, Deputy Simmons was not the affiant, but in this probable cause affidavit, it says that Deputy Simmons saw the appellant holding a phone in his hand. His head was tilted down, and it appeared that he was texting. What does that mean, appear that he was texting? He's not the affiant. Deputy Simmons says a little differently, doesn't he? Your Honor, unfortunately, I did not litigate the motion to suppress, but the facts is found, and is contained in both the United States' brief and the appellant's brief. It's not disputed, Your Honor. It probably doesn't matter, because if he can't tell what he's typing on the phone, he doesn't know whether he's... He just has to guess, right? Well, Your Honor, I think, in a sense, that's what law enforcement does all the time, which is why... No, they're not allowed to stop people based on a guess. Let me take you to a question that was suggested in an appellant's brief. Indiana law also prohibits drivers who are operating a vehicle on a public highway from drinking an alcoholic beverage, right? Yes. Some people like to drink their coffee spiked. So, an officer sees somebody drinking a cup of coffee. Does he have reasonable suspicion to stop him? No. Why not? Because the factual scenario you've given, Your Honor, there are no other facts, other than somebody just drinking a cup of coffee. Yes, but look, what does it mean when he said, appear to be texting? What does that mean? Your Honor, I would say that when an... If an officer, as Deputy Simmons saw, sees someone driving a car, has a phone in their hand, their head is tilted down, and it appears that he was texting, I'm not sure, Your Honor... What does it mean to appear to be texting? I would say, in this context, Your Honor... How does that differ from appear to be... typing a telephone number? Did anyone ask him? What does it mean? What did you see? If all you saw was someone holding a cell phone, he could be doing anything with it. But he could be texting as well, Your Honor. Yes, but this is Judge Hamilton's question. His cup of coffee could be spiked. Well, Your Honor, in that factual scenario, though, with no other indication... Look at this one. All he did was see a person fussing with his cell phone. And that's no different from seeing a person drinking a cup of coffee. The cup of coffee may be spiked, and what he may be doing with his cell phone is texting. They're absolutely identical cases. I disagree, respectfully, Your Honor, because with no other indication of what's in that coffee cup... You are completely wrong. Because if I'm holding a cell phone and typing a phone number, it's going to look exactly as if I am texting. That's right, Your Honor, but someone just drinking a cup of coffee does not look exactly like someone drinking alcohol. Of course it does, because look, what percentage of people who are holding a cell phone while driving are texting? Well, that I don't know, Your Honor, but... Yes, you don't know. You don't know anything about creating an objective basis for this action by the police officer. Well, Your Honor... Would the experience of the police officer, just his experience as an individual and as a police officer, with regard to how frequently he or other people text versus call make any difference? It might, Your Honor. Unfortunately, that wasn't made part of the record here, so it's unclear what if it is a 1% probability. Is that enough for a reasonable cause to arrest a person? If... Again, it gets back to the reasonableness of what an officer sees and how he acts on it. Well, answer my question. Is 1% probability of texting enough to justify the arrest? Your Honor, I'm not sure. I don't know. This is why officers have to make a reasonable cause. What is the judgment? What is the judgment? You haven't told us. What is it about this manipulation of the cell phone that gave the officer some reason to think it was texting, except for the fact it could be texting? But, Your Honor, I see that... That's all you're saying. It could be texting. There's no reason to think it was texting. But, to me, Your Honor, that fits within the reasonable mistakes of fact that officers make all the time. But the same with Judge Hamilton's coffee example. Your Honor, with respect... The officer says, well, you know, some people drink their coffee spiked. Right? And some people text. And it's the same thing. And how do you distinguish those two cases? I think, with respect, I think a more helpful analogy... No, you tell me how you distinguish those two cases. Your Honor, it boils down to a court's consideration... No, it doesn't. You tell me how those two cases differ. His case and this case. It differs, Your Honor, because I don't think that there would be a reasonable basis for... Why? What if it turns out the probability of drinking spiked coffee is identical to the probability  How would you possibly distinguish those two cases? I'm not sure, Your Honor. You know, every police officer has to make a snap judgment in the field. The Supreme Court recognizes that officers are... A snap judgment, an irrational snap judgment, that any time there's like a one percent probability of some irregularity, some possible violation, it goes directly to the reasonableness question, Your Honor. I think it would be unreasonable for officers to pull over everybody they saw drinking out of a cup of coffee. Why? Because you think they can do that with everybody who's holding a cell phone. But then again, Your Honor, if there was a study that said that there was a large percentage of people, and in fact we have studies that if there was some study that said that there was a huge number of people in a particular location that were drinking alcohol out of a coffee cup, and it was in that officer's judgment based on the huge number of them in this local community and his training and experience, that could be a reasonable reason or one among other factors that an officer has to consider, Your Honor. And it's an amber fluid, the officer sees this, pulls the person over, turns out low and behold, it's ice. I think we give you that one. But that's not what we've got. What we've got here is really no indication of any specific articulable fact that would distinguish legal from illegal activity. It doesn't matter whether he's right or wrong ultimately about what happens, but he's got to have a reasonable basis. Let me ask you, Mr. McCoskey, to follow up on one of Judge Kaney's questions. Does Indiana have a separate distracted driving statute? I believe so, Your Honor, but I don't want to misstate it. I'm not aware of it specifically. I mean, I've been looking and I haven't found it yet, and it's not in the briefs. But I would say the point here in this case is when someone is looking down, as Deputy Simmons saw, the appellant was looking down at a phone doing something, he believed it was texting, that's what he said. But I think that in light of the fact that... I don't understand why no one asked him, what's the basis for your belief that he was texting? That is such a simple question and would resolve the case. It would have resolved the case, right? My time is up. Thank you, Your Honor. Okay, well, thank you very much, Mr. McCoskey. Mr. Ansell, do you have anything further? Thank you, Your Honor. I just wanted to point out that it seems to be that the consensus among law enforcement based on these news articles is that they can't distinguish texting from any other use of a phone, and that's why they're having such trouble with the statute. Okay, well, thank you very much. And you were appointed, were you not? Yes, Your Honor. We thank you for your efforts on behalf of the client. We certainly thank Mr. McCoskey as well for his heroic efforts. Okay.